# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**STEVEN R. DEWITT,**

      **Petitioner,**

**v.**                      **Case No.  4:15cv433-MW/CAS**

**STATE OF FLORIDA,**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On October 19, 2015, Petitioner, Steven R. Dewitt, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se, filed a petition for writ of habeas corpus with attachments pursuant to 28 U.S.C. § 2254.  ECF No. 5.  Respondent filed an answer on June 17, 2016, ECF No. 20, and filed exhibits.  ECF No. 21.  Petitioner filed a reply on July 15, 2016.  ECF No. 25.  Petitioner challenges his conviction and sentence entered by the Circuit Court of Leon County, Florida.

A report and recommendation was filed on May 16, 2017, ECF No. 31.  Subsequent to that filing, on May 24, 2017, Petitioner filed a motion requesting leave to amend and/or supplement the petition with four amended and/or supplemental claims.  ECF No. 32.  On that same date he

also filed a petition for reconsideration explaining why the motion for leave to amend had been delayed in filing due to prison mailroom problems. ECF No. 33. On May 31, 2017, an order on Petitioner's motion for reconsideration and motion to amend was issued, granting Petitioner's motion to amend his § 2254 petition to add four claims and vacating the previously issued report and recommendation. ECF No. 34. On June 6, 2017, Petitioner filed a motion requesting leave to supplement the argument in Ground 2 of his initial § 2254 petition. ECF No. 7. That motion was granted by order issued June 9, 2017. ECF No. 38. Respondent was given leave to file a supplemental answer, which was filed on June 30, 2017. ECF No. 39. Petitioner filed a reply on July 18, 2017. ECF No. 40.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all the issues raised in the initial § 2254 petition and the amended and supplemental claims, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief and this § 2254 petition as supplemented and amended should be denied.

## Background and Procedural History

On May 23, 2007, Petitioner was charged by Information filed in the Circuit Court in and for Leon County, Florida, alleging that on or about April 13, 2007, Petitioner did solicit L.L., a person under 16 years of age, to commit a lewd or lascivious act in violation of section 800.04(6)(b), Florida Statutes.  Ex. A at 1.[1]  An Amended Information was filed on September 25, 2007, specifying that Petitioner committed the alleged lewd or lascivious act by asking L.L. to perform oral sex on him.  Ex. A at 3.  Jury trial was held on October 5, 2007, Ex. B, and the jury returned a verdict finding Petitioner guilty as charged.  Ex. A at 230; Ex. B at 377.  Petitioner was sentenced to seven years in prison to be followed by eight years of sex offender probation.[2]  Ex. A at 420-28, 434-42; Ex. C; Ex. D.

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through AA submitted in conjunction with Respondent's answer.  *See* ECF Nos. 20, 21.

[2] After he was released from the seven-year sentence and placed on probation, Petitioner was found in violation of his sex offender probation on March 1, 2016, and was resentenced to 10 years in prison.  Ex. W.  His appeal from revocation of probation was voluntarily dismissed.  Ex. X.

Petitioner appealed his conviction and sentence to the state First District Court of Appeal.[3]  Ex. E.  During the pendency of the appeal, Petitioner filed a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) challenging a fine and surcharge.  Ex. F.  The motion was granted and an amended judgment and sentence was entered on February 23, 2008.  Ex. G.  On October 12, 2010, the First District Court of Appeal affirmed per curiam without written opinion, Ex. J, and issued a mandate on October 28, 2010.  Ex. K.  *See* Dewitt v. State, 46 So. 3d 49 (Fla. 1st DCA 2010) (table).  A separate motion to correct sentencing error relating to credit for time served was denied on December 20, 2011.  Ex. N.

Petitioner filed his motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on April 28, 2011, along with exhibits.  Exs. L, M.  An amended Rule 3.850 motion was filed on January 3, 2013, raising fifteen claims of ineffective assistance of counsel and one claim of violation of due process.[4]  Ex. O at 1-264.  On October 3, 2013, Petitioner

---

[3] On direct appeal, Petitioner raised the following claims of error: (1) trial court error in denying the requested jury instruction regarding Petitioner's knowledge he was speaking to the alleged victim; and (2) violation of due process by lack of a knowledge requirement regarding the victim's age in section 800.04(6)(a)2, Fla. Stat.  Ex. E.

[4] Petitioner raised the following claims in the amended Rule 3.850 motion: (1) counsel made inappropriate agreement with the prosecutor; (2) ineffective assistance of counsel (IAC) for failing to object to testimony of Detective Goggle on Richardson grounds; (3) IAC in failing to object to violation of sequestration rule; (4) IAC in failing to make a

filed a second amended or supplemental motion for post-conviction relief

adding another claim of ineffective assistance of counsel and a <u>Giglio</u>[5]

claim.  Ex. O at 271-81.  Counsel was appointed for Petitioner, but on June

5, 2014, counsel moved to withdraw, Ex. O at 313, and Petitioner was

allowed to represent himself.

     An evidentiary hearing was held on July 18, 2014, at which Petitioner

appeared pro se.  Ex. O at 359-489.  The court denied post-conviction relief

on the record and in an order entered July 18, 2014, noting that claims 3, 4,

12, 13, 14, 15, and 16 were abandoned by Petitioner's failure to present

any evidence pertaining to them.  Ex. O at 327-28.  The court further found

---

<u>Brady</u> claim during trial; (5) IAC in failing to present critical evidence to establish a defense that Petitioner was set up; (6) IAC in counsel's failure to interview and/or call critical witnesses Broxton, Hayes, Barone, Nichols, Eagen, and Merinolo; (7) IAC in failing to request a continuance; (8) IAC in failing to file a second, legally sufficient motion to dismiss during pretrial proceedings; (9) IAC in failing to adequately request a suppression hearing during trial; (10) IAC in failing to press a motion to suppress during trial; (11) IAC in failing to timely file motion to suppress; (12) IAC in failing to reiterate legal argument for judgment of acquittal; (13) IAC in failing to make critical argument to the jury regarding innocence; (14) IAC in failing to request the court to review the alleged victim's testimony when seeking acquittal; (15) IAC in failing to renew motion for judgment of acquittal post-trial; and (16) violation of due process by complete lack of evidentiary support for the first element of the crime charged.  Ex. O at 1-68.  Petitioner filed a supplement to add claim (17), IAC in failing to object to improper prosecutorial comment, and claim (18), <u>Giglio</u> violation during trial.  Ex. O at 271-76.

[5] <u>Giglio v. United States</u>, 405 U.S. 150 (1972) (providing post-conviction relief when the petitioner proves that the prosecutor used perjured testimony or failed to correct what he learned was false testimony and such use was material, i.e., there is a reasonable likelihood that the testimony could have affected the judgment of the jury).

that all the claims were without merit and were subject to denial. *Id.*

Rehearing was denied, and Petitioner appealed.[6] Ex. O at 329-52, 357.

The state First District Court of Appeal affirmed per curiam without

written opinion on June 11, 2015, Ex. S, and the mandate was issued on

June 29, 2015. Ex. T. *See* Dewitt v. State, 166 So. 3d 769 (Fla. 1st DCA

2015) (table). Petitioner's notice of appeal to the Florida Supreme Court,

which was treated as a notice of discretionary review, was dismissed for

lack of jurisdiction. Ex. V. *See* Dewitt v. State, 173 So. 3d 961 (Fla. 2015)

(table).

Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, as supplemented and amended, raises the following grounds for

relief:

> **Ground 1:** Trial counsel rendered ineffective assistance by failing to file a second motion to dismiss which could have caused the court to revisit its prior denial at the August 29, 2007, motion hearing, ECF No. 5 at 6.

> **Ground 2:** Trial counsel rendered ineffective assistance by failing to present the testimony and evidence of Ernestine Hayes which could have refuted the testimony of the alleged victim and Detective Todd Chaires, ECF No. 5 at 9. By supplemental argument, Petitioner also alleges that trial

---

[6] The claims raised on appeal from denial of postconviction relief were: (1) the court erred in denying the claim of ineffective assistance of counsel for failure to file a second legally sufficient motion to dismiss; (2) the court erred in denying the claim that trial counsel was ineffective for failing to interview and/or call critical witnesses at trial; and (3) the court erred in denying the motion for rehearing. Ex. P.

counsel rendered ineffective assistance in failing to present the testimony and evidence of Teresa Broxton.  ECF No. 37 at 4.

**First Supplemental Ground:** Trial counsel rendered ineffective assistance by agreeing with the prosecutor prior to trial not to put on evidence of the victim's allegation that Petitioner solicited her at a neighborhood park, and by failing to present evidence that would have refuted the park incident allegation, thereby raising reasonable doubt about the victim's testimony that Petitioner solicited her over the telephone.  ECF No. 33 at 13.

**Second Supplemental Ground:** Trial counsel rendered ineffective assistance by failing to present testimony and evidence regarding his GPS monitoring records through Teresa Broxton, employed by Leon County Pretrial Release center, which would have showed that he was at his mother's house when the solicitation call was made, where he could not have made the call.  ECF No. 33 at 13-15.

**Third Supplemental Ground:** Trial counsel rendered ineffective assistance by failing to object to or require the State to correct the prosecutor's <u>Giglio</u> violation in the state's opening and closing argument by reference to a unprosecuted stalking charge for which the State and the defense had irrefutable GPS records showing that the stalking could not have occurred. ECF No. 33 at 16.

**Fourth Supplemental Ground:** Trial counsel rendered ineffective assistance by failing to object to improper prosecutorial comments.  ECF No. 33 at 16.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances. Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d). *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts." Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law

claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)). In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)). Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The State must have been provided the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Henry, 513 U.S. at 365) (quoting Picard, 404 U.S. at 275 (citation omitted)). "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secure by the Constitution,' it is

not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). *See also* Swarthout v. Cooke, 562 U.S. 216, 221 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second,

the defendant must show that the deficient performance
prejudiced the defense. This requires showing that counsel's
errors were so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness." *Id.* at 688. Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690). Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt." *Id.* at 13. The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct. *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at

690).

To demonstrate prejudice under Strickland, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." 466 U.S. at

694. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* For this Court's purposes, "[t]he question

'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination

was unreasonable—a substantially higher threshold.' " <u>Knowles v.
Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550
U.S. 465, 473 (2007)).  "And, because the <u>Strickland</u> standard is a general
standard, a state court has even more latitude to reasonably determine that
a defendant has not satisfied that standard." <u>Mirzayance</u>, 556 U.S. at 123.
It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim
evaluated under the § 2254(d)(1) standard." *Id.*  Both deficiency and
prejudice must be shown to demonstrate a violation of the Sixth
Amendment.  Thus, the court need not address both prongs if the petitioner
fails to prove one of the prongs.  <u>Strickland</u>, 466 U.S. at 697.

## <u>Ground 1: Failing to File Second Motion to Dismiss</u>

Petitioner first contends that his trial counsel rendered ineffective
assistance by failing to file a second motion to dismiss which, he argues,
could have caused the court to revisit its prior denial of the first motion to
dismiss.  ECF No. 5 at 6.  Petitioner was charged with a violation of section
800.04, Florida Statutes (2007), which provides in pertinent part as follows:

> (6) LEWD OR LASCIVIOUS CONDUCT.—
> (a)  A person who:
> 1.  Intentionally touches a person under 16 years of age
> in a lewd or lascivious manner; or

2.  Solicits a person under 16 years of age to commit a lewd or lascivious act

commits lewd or lascivious conduct.

(b)  An offender 18 years of age or older who commits lewd or lascivious conduct commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 800.04(6), Fla. Stat. (2007).  Petitioner was charged with violation of this statute by his conduct in asking L.L, a person under age 16, to perform oral sex on him.  Ex. A at 3.

Prior to trial, defense counsel filed a motion to dismiss, arguing that the material and undisputed facts failed to establish a prima facie case of guilt.  Ex. A at 56-74.  In the motion to dismiss, counsel argued that the undisputed facts included the following: the alleged victim L.L. was a 15-year-old girl; Petitioner was a 35-year-old male; Petitioner never touched L.L.; the alleged victim claimed she received a telephone call from an unidentified caller while at a bus stop; she claimed she received a second call that day from the same caller, who said his name was "Andre," and in which the caller asked her to "suck his dick" and made other sexual comments;  L.L. later received an early morning call from someone she knew as "Tank" who said he was coming to her home; someone knocked on L.L.'s window but Petitioner's GPS monitor showed it was not him; several telephone calls were made to L.L. from Petitioner but in those calls

he never made any sexual references; and, in a recorded call with Petitioner, L.L. told him that he said he was going to "eat my pussy" but Petitioner responded he did not remember having a conversation. Ex. A at 56-59.

Defense counsel contended that, based on these facts, the State would be unable to prove the charge against Petitioner. Counsel also argued that the facts showed, at most, violation of a separate statute, section 365.16(1)(a), Florida Statutes, which makes obscene, lewd, or lascivious telephone calls to a "person" a second degree misdemeanor, not a felony. Ex. A at 61. Counsel contended that the specific reference in section 365.16 to commit a lewd, lascivious, obscene, filthy, vulgar or indecent offense by telephone requires that section 365.16 take precedence over section 800.04, which he argued pertains to lewd or lascivious conduct in a more general sense. The State filed a traverse under Florida Rule of Criminal Procedure 3.190(d), denying certain of the alleged undisputed facts and alleging other material facts not stated in the motion to dismiss.[7] Ex. A at 82.

---

[7] Under Rule 3.190, if the State specifically denies material facts alleged in a motion to dismiss, the motion "shall be denied." *See* Fla. R. Crim. P. 3.190(d). It takes very little refutation by the State to overcome a motion to dismiss under this rule. *See, e.g.*, <u>State v. Wall</u>, 445 So. 2d 646, 649 (Fla. 2d DCA 1984).

After a pretrial hearing, the trial court denied the motion, noting that section 800.04 specifically prohibits solicitation of minors for a lewd or lascivious act, whereas section 365.16 refers to a "person" but does not specifically refer to minors. Ex. Z at 20 (transcript pagination). The court left open the option for defense counsel to provide additional argument or authority on the motion to dismiss but, barring that, the court held that the State's "traverse stands" and the motion was denied. Ex. Z at 24. No additional authority or second motion to dismiss was filed by counsel prior to trial. At trial, the jury was given the option of finding Petitioner guilty of the lesser offense of making an obscene telephone call, but found him guilty as charged. Ex. A at 230.

Petitioner contends here, as he did in his Rule 3.850 post-conviction motion, that trial counsel rendered ineffective assistance by failing to file an amended motion to dismiss containing additional authority, including other unrelated statutes that define "person" as including children, to support his statutory construction argument that section 365.16 takes precedence over section 800.04 on the facts of this case. *See* ECF No. 5 at 26 (attached draft motion). Petitioner argues that the reference in section 365.16 to a "person" includes all persons, including children, and because the alleged offense was committed by telephone and would have been a misdemeanor

offense, the prosecutor could not charge petitioner with a felony under section 800.04.  Petitioner contends that if this argument had been presented to the trial court in an amended motion to dismiss, it "could possibly have caused [the court] to revisit its prior ruling of denial."  ECF No. 5 at 6.

An evidentiary hearing was held on the post-conviction claim raising this issue.  Ex. O at 359-488.  Trial counsel testified that he did not file an amended motion to dismiss citing additional authority to support the argument that section 365.16 would govern under the facts of the case because "[w]e were not able to find a case that said that specifically."  Ex. O at 382.  He further explained, "No case said that the lewd and lascivious statute would be trumped by the harassing phone call statute.  That is what Judge Dekker wanted for us to find."  *Id.*  Defense counsel also testified that he, along with three other attorneys in his firm and a Washington, D.C., firm, also researched "for many hours" in an effort to find any authority that would satisfy what Judge Dekker required.  Ex. O at 374.  Although no second motion to dismiss was filed, Defense counsel did make an expanded statutory construction argument in a motion for new trial, Ex. A at 237-39, which was denied.  Ex. A at 383.

The post-conviction court denied the claim of ineffective assistance of counsel, concluding on the record that trial counsel was not deficient in failing to present additional authority to support an amended or second motion to dismiss.  Ex. O at 391-92.  The court further found that if the amended motion had been filed without clear legal support, it would not have altered the outcome of the trial.  *Id.*  In the written order denying post-conviction relief, the court stated that the requirements of Strickland had not been met.  Denial of this claim was affirmed by the state district court of appeal.  These state court adjudications are entitled to AEDPA deference.  As noted earlier, the question is not whether the state court adjudications were incorrect, but whether they were unreasonable, which is a higher threshold.  *See* Mirzayance, 556 U.S. at 123; Schriro, 550 U.S. at 473.  The post-conviction court did correctly and reasonably determine that even if the additional statutory construction argument citing the broad definition of "person" had been made in an amended motion to dismiss, there is no reasonable probability that the motion would have been granted and that the outcome of the proceedings would have been different.

The statutory construction principles cited by Petitioner actually defeat his argument that the obscene telephone call statute, section 365.16, would take precedence over section 800.04 because it deals with

telephone calls, and because a minor is included within the category of "person" as used in 365.16.  It is a well settled rule of statutory construction in Florida that a statute covering a particular subject matter is controlling over a statute covering the same and other subjects in general terms. McDonald v. State, 957 So. 2d 605, 610 (Fla. 2007).  Section 365.16, Florida Statutes (2007), provides that whoever "[m]akes a telephone call to a location at which the person receiving the call has a reasonable expectation of privacy; during such call makes any comment, request, suggestion, or proposal which is obscene, lewd, lascivious, filthy, vulgar, or indecent; and by such call or such language intends to offend, annoy, abuse, threaten, or harass any person at the called number: . . . is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083." § 365.16(1)(a), Fla. Stat. (2007).  Section 365.16 is part of a legislative scheme primarily concerned with "Use of Telephones and Facsimile Machines," as this title of the chapter indicates.  The chapter also includes a statute making unsolicited intrastate advertising by facsimile machines an offense, section 365.1657, Florida Statutes, and provisions for emergency communications telephone numbers, sections 365.171-365.175, Florida Statutes.

Although section 365.16 does involve an offense committed by use of a telephone, it does not specifically refer to solicitation of a lewd or lascivious act from a minor; whereas section 800.04 does make such a specific reference to soliciting a lewd or lascivious act from a person under age 16. As the trial court noted in denying the motion to dismiss, by expressly making solicitation of minors for lewd or lascivious acts—by whatever means—a felony, the Legislature can be said to have evinced an intent to punish such specific conduct with minors more severely than other conduct involving harassing or indecent telephone calls to other persons generally. Ex. Z at 18 (transcript pagination).

Moreover, under Florida law, the prosecutor has discretion to charge under section 365.16 or some other statute, depending on the conduct at issue. The court in Seybel v. State, 693 So. 2d 678 (Fla. 4th DCA 1997), held that the prosecutor was not required to charge the defendant under section 365.16 for making harassing telephone calls to his wife rather than charging him with felony aggravated stalking. *Id.* at 679. The defendant In Seybel made the same argument that Petitioner makes here—that section 365.16 is a specific statute covering a particular subject matter, i.e., telephone calls, and controls over a more general statute. The court cited the Florida Constitution, which provides the prosecutor with discretion to

decide whether and how to prosecute a defendant.  *Id.*; Art. II, § 3, Fla.

Const.  *See also* State v. Bloom, 497 So. 2d 2, 3 (Fla. 1986) ("[T]he state

attorney has complete discretion in deciding whether and how to

prosecute.").  The court in Seybel also noted the Florida Supreme Court's

explanation in State v. Cogswell, 521 So. 2d 1081, 1082 (Fla. 1988), that

"[i]t is not unusual for a course of criminal conduct to violate laws that

overlap yet vary in their penalties.  Multiple sentences are even allowed for

conduct arising from the same incident.  Traditionally, the legislature has

left to the prosecutor's discretion which violations to prosecute and hence

which range of penalties to visit upon the offender."  Under Petitioner's

construction of section 365.16, his conduct could have been charged under

either section 365.16 or 800.04.  Thus, the prosecutor had discretion to

determine how to prosecute based on the specific facts of the case—facts

specifically involving solicitation of a lewd or lascivious act from a child

under age 16.  Moreover, this charging decision turned on an issue of state

law.  As noted earlier, "it is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions," and "[i]n

conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."

McGuire, 502 U.S. at 67-68.  Only when a state law error rises to the level

of fundamental unfairness does it implicate federal constitutional due process subjecting it to federal habeas review. *See, e.g.,* <u>Osborne v. Wainwright</u>, 720 F.2d 1237, 1238 (11th Cir. 1983). That extraordinary showing has not been made.

By denying this post-conviction claim, and by affirming that denial on appeal, the state courts concluded that trial counsel had no professional obligation to pursue a second motion to dismiss on grounds cited by Petitioner. These rulings demonstrate that even if counsel had made the amended motion Petitioner alleges should have been made, there is no reasonable probability that the motion would have been granted. For these reasons as well, the post-conviction court correctly determined that trial counsel did not render ineffective assistance by failing to file an amended motion to dismiss based on the additional statutory construction argument cited by Petitioner.

Finally, even if the amended motion had been made, such additional argument on statutory construction would not have defeated the State's traverse, which specifically denied some of the material facts alleged by Petitioner. Based on that traverse, under Florida Rule of Criminal Procedure 3.190, the trial court would have been required to deny the motion to dismiss. For all these reasons, the state post-conviction court's

determination that trial counsel was not constitutionally ineffective was not

contrary to or an unreasonable application of <u>Strickland</u> or any other clearly

established federal law as determined by the Supreme Court. The state

court's adjudication has not been shown to be an unreasonable

determination of the facts in light of the evidence presented in the state

court record. Accordingly, habeas relief on Ground 1 should be denied.

## Ground 2: Failing to Present Testimony and Evidence

Petitioner contends that trial counsel rendered ineffective assistance

by failing to present the testimony of his mother, Ernestine Hayes, which he

says could have refuted the testimony of the alleged victim and Detective

Todd Chaires. ECF No. 5 at 9. He also contends in his supplemental

claim related to this ground that trial counsel should have presented the

testimony of Teresa Broxton, employed by the Leon County Pretrial

Release Center, who he contends could have testified to relevant

information derived from his GPS monitoring records. ECF No. 33 at 5.

Petitioner points to testimony of L.L. that on April 12, 2007, she

received two telephone calls from a blocked number and, in the second

call, the caller told her he wanted her to "suck his dick." ECF No. 5 at 9.

Other evidence was presented that Petitioner was identified as the person

making the calls to L.L. that day. Petitioner argues that Hayes would have

testified that her telephone records show no phone calls were placed from her telephone to L.L.'s cell phone that day, which would have refuted the implication by Detective Chaires that Petitioner placed the calls from Hayes' landline telephone. Petitioner argues that evidence showed he was at her house on the morning of April 12 and his own cell phone was not operable, so if his mother's telephone records did not show a call to L.L., that would refute the implication that he called L.L. that morning from his mother's telephone. Petitioner contends that trial counsel should have presented Hayes to "testify about the information found in her home phone records, information showing that (on the date of April 12, 2007), no outgoing calls (blocked or non-blocked), were made to . . . the alleged victim's assigned cellular phone number." ECF No. 5 at 10 n.3.

This claim was raised in the Rule 3.850 motion, Ex. O at 18-31. In that claim, Petitioner cited as necessary to his defense, the testimony of both Hayes and Broxton. *See* Ex. O at 18-19 (Broxton); Ex. O at 22-25 (Hayes). An evidentiary hearing was held at which trial counsel testified he did not call Hayes to testify because he did not recall anything of value Hayes could have provided and because her testimony would have

involved disclosure of Petitioner's prior criminal history.[8]  Ex. O at 437-38.

Counsel also testified that Hayes could not have authenticated her

telephone records from Embarq and that he had not been able to secure a

witness from Embarq to authenticate the records.  Ex. O at 440.  Counsel

said he needed a continuance in order to do so, but Petitioner "refused to

agree to any further continuance."  *Id.* at 440-41.  He also stated, "I

implored Mr. Dewitt to agree to me asking for a continuance so that I could

get either a business record affidavit or the records custodian here."  Ex. O

at 445-46.  He agreed that Petitioner still wanted to go to trial without

putting on the witnesses which Petitioner contends in his Rule 3.850 should

have been called, including Hayes.  *Id.*

At the evidentiary hearing regarding Claim 6, Petitioner also argued

that trial counsel should have presented Broxton to testify to the GPS

monitoring records.  The judge noted, however, that he had already

determined that trial counsel was not deficient in failing to present GPS

records.  The court had already concluded that it was a judgment call for

counsel not to introduce evidence that Petitioner was on probation or on

---

[8] Petitioner argued at the hearing on his Rule 3.850 motion that his GPS monitor would
have established he was at his mother's home during the time period the calls were
made to L.L.  Ex. O at 437.  Trial counsel expressed concern that this testimony would
have informed the jury that Petitioner had a criminal history.  However, Petitioner
testified at trial that he had been in jail, was on probation, and was wearing a GPS
monitor on the day of the calls.  Ex. B at 192, 202.

GPS monitoring.  Ex. O at 434.  The court reiterated the following regarding

Claim 6:

> I have already ruled on Claim 6.  I don't think there's been any
> showing that any of the witnesses listed were critical witnesses.
> I don't think there's been any showing that any of the testimony
> that they allegedly would have presented would have been
> something that would have caused the jury to reach of different
> verdict.  I don't find that they're prejudicial.  I find that it was a
> judgment call on the part of the lawyer for the defendant not to
> call those witnesses.  And I have no testimony to rebut the fact
> that that judgment call was anything but a proper decision
> made under the circumstances.  So Claim 6 is denied as to all
> witnesses.

Ex. O at 444-45.  The court further found that trial counsel's efforts were

thwarted by Petitioner, and that trial counsel's testimony was more credible

than Petitioner's, who testified that he did ask counsel to request a

continuance "way before trial."  Ex. O at 446, 449.

Respondent contends as to the supplemental argument concerning

witness Broxton that the claim is unexhausted because on appeal from

denial of Claim 6, Petitioner only challenged the ruling as to witness

Ernestine Hayes, not Teresa Broxton.  ECF No. 39 at 9; *see* Ex. P at 22-

24.  Respondent is correct and cause has not been shown for this failure.

Regardless of any procedural default as to the claim relating to witness

Broxton, this ground lacks merit and should be denied.

At trial, the victim, L.L., whose nickname was "KiKi," testified that on April 12, 2007, she was at the city bus stop by her home at 9:11 a.m. waiting to take a bus to get to school and received a call on her cell phone from a blocked number. Ex. B at 24, 51 (transcript pagination). When she asked who was calling, he said, "Andre" and that he got her number from her when she was at the bus stop by her school, but she did not recall that happening. Ex. B at 25. L.L. testified she received a second call when she was at the city bus terminal waiting to get the next bus to her school when the man called again. Ex. B at 26. During that conversation, she said the caller began "talking nasty" to her. *Id.* She testified, "He said that I look - - I got bigger since I was a little girl. And that he asked to eat my pussy and he wanted me to suck his [d]ick." *Id.* At that point, she did not know who he was, but based on his statement that she used to "hang out" with his niece, whom he named, L.L. realized the caller was a man nicknamed "Tank," whom she identified in court as Petitioner. Ex. B at 27-28.

At school the next day, L.L. reported the calls and a deputy at the school told her to take her cell phone to class in case the man called again. She did receive a call while in class and her teacher heard part of it. *Id.* at 29. Deputies took her home and instructed her how to record any further calls, which she did. *Id.* at 30. L.L. testified that the same person who had

called her and asked her to "suck his private areas" called back and was recorded, although he did not make any sexual comments. *Id.* During one call from the person L.L. identified as the same caller, but which was not recorded, the telephone number of the caller was not blocked.[9] Ex. B at 93-94. After this last call, in which the caller asked and was given her address, Petitioner arrived at L.L.'s home. Ex. B at 41, 94. Petitioner was arrested and officers took Petitioner's cell phone and found L.L.'s phone number saved on it under the name "Kay." Ex. B at 98, 127.

Detective Todd Chaires testified that after Petitioner was arrested at L.L.'s home, he was interviewed, but not recorded,[10] and stated he knew the victim for several weeks and was trying to recruit her for a church choir group. Ex. B at 147. When asked if he told L.L. he wanted to perform oral sex on her, Chaires testified, Petitioner said he probably did but that he thought the person he was talking to was 21 years old. Ex. B at 147. Chaires said Petitioner then explained that the person he thought was 21 years old was actually another person, and he thought the girl he was

---

[9] The unblocked call came from a telephone number that was not Petitioner's cell phone number, and evidence was presented that his cell phone account was not active. Ex. B at 99, 199. Petitioner later presented testimony that the telephone with the unblocked number from which the last call to L.L. was made was located in the Palmer Monroe Recreation Center. Ex. B at 174, 222.

[10] Petitioner testified at trial that the interview was, in fact, recorded, and he believed it was being withheld on purpose. Ex. B at 213.

talking to was 18 or 19.[11]  *Id.* at 148, 155.  Chaires testified that Petitioner told him he had recorded some of the calls on his cell phone, which he then amended to say on his mother's home phone.  Ex. B at 148-49.

Petitioner testified at trial and, in an attempt to lay a predicate for other testimony supporting his theory that he was being "set up," testified that in January 2007, he was in the Leon County Jail and had an altercation with an inmate who had stolen from him.  Ex. B at 192-93.  Petitioner testified the individual threatened revenge after they were disciplined.  Ex. B at 195-96.  Petitioner said after he was released from jail, he met a woman at the mall who said her name was Kay and that she was 21 years old, who gave him a telephone number which actually belonged to L.L.'s cell phone.  Ex. B at 198-99.

Petitioner testified that he was at his mother's house on the morning of April 12 but denied making any telephone calls to L.L. that morning.  He said he did speak with the person he thought was Kay on April 12 at night, using the cell phone that belonged to someone who claimed to know Kay and who claimed that Kay wanted to talk with him.  Ex. B at 204-06.

---

[11] Section 800.04(3), Florida Statutes, provides that "[t]he perpetrator's ignorance of the victim's age, the victim's misrepresentation of his or her age, or the perpetrator's bona fide belief of the victim's age cannot be raised as a defense in prosecution under this section."

Petitioner testified he did call the number he had for Kay at 1:04 a.m. because she had asked him to call her, and he called that number to talk to her on other occasions. These calls went to L.L.'s cell phone. Petitioner testified he did not know it was L.L. he was speaking with, and believed it was the woman named Kay, and he denied ever talking about sex.[12] Ex. B at 208-09. Petitioner testified that he thought the entire situation with L.L.'s cell phone number being the given to him by a woman named Kay was part of a set-up by the individual he had the altercation with at jail and by L.L. Ex. B at 212.

Defense counsel presented other witnesses toward proving his theory of defense, including the individual who Petitioner had the altercation with at the jail, Marvin McDonald. McDonald testified that he did have a fight with Petitioner in the jail but denied he had made any threats and denied telling anyone that he had set up Petitioner. Ex. B at 253-55. He denied knowing L.L. or anyone named Kay. Ex. B at 155. Cedric Bell, who knew McDonald, testified that while in jail, McDonald told him he set up Petitioner for this offense and made threats against Petitioner and his family. Ex. B at 267-68. Bell testified he was told that several men from Miami and two

---

[12] In none of the recorded calls did Petitioner make any sexual references.

women named Kayla and KiKi helped set up Petitioner.  Ex. B at 269.  Bell also testified that McDonald would refer to Petitioner as D'Andre.  *Id.*

Deputy Davis, who worked at the jail, testified that after the altercation in the jail between Petitioner and McDonald, incident reports were given to both men but were mixed up so that McDonald got Petitioner's report, which showed Petitioner's home address.  Ex. B at 291-92.  Davis said Petitioner reported that McDonald made threats against him so officers were sent out to make sure Petitioner's family was okay.  Ex. B at 293.  Davis did not witness the threats.  *Id.*  The jury found Petitioner guilty as charged of soliciting a lewd or lascivious act from L.L.  Ex. B at 377.

Petitioner contends that the implication from Detective Chaires' testimony was that Petitioner made the telephone calls on the morning of April 12, 2007, to L.L. from his mother's home telephone, and that Hayes' testimony about her telephone records and Broxton's testimony about his GPS records would have refuted that implication.  He argues that trial counsel's explanation of why he did not present Hayes' testimony was insufficient to show a reasonable strategy by counsel because a custodian from Embarq would not have been a necessary witness and a continuance would not have been necessary to secure the presence of a custodian.  He

illustrates this with the fact that the court allowed L.L. to identify and testify about her own telephone records without any authentication by a records custodian.  *See* Ex. B at 176.  In addition, the rationale that Hayes' and Broxton's testimony would have disclosed Petitioner's criminal history was somewhat unpersuasive in light of the fact that Petitioner himself testified he was wearing a GPS monitor, and he and other witnesses made references to his having been in jail prior to the date of the charged offense.

Despite the fact that trial counsel did not present persuasive reasons why he did not call Hayes or Broxton to testify, Petitioner has not demonstrated a reasonable probability that, but for trial counsel's alleged error, the result of the trial would have been different—a reasonable probability being one sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694.

L.L. testified that the person who called her on the morning of April 12 and asked her to "suck his dick" was the same person who called her a number of times later and who was arrested after the last telephone call when he arrived at her home.  Even if evidence was presented that the solicitation call was not placed from Hayes' telephone, that evidence would not refute the victim's identification of Petitioner as the caller.  Witness

David Barone, a relative of Petitioner by marriage, testified that he was with Petitioner and other family members at Hayes' home on the morning of April 12 and that he did not remember anyone making calls. Ex. B at 286. However, he also testified that he left between 8 a.m. and 8:30 a.m. to go to a cleaning job and said, "I took him with me to, you know, so he could make some money." Ex. B at 286-87. This reference appeared to refer to Petitioner. Barone testified that when they arrived at the cleaning job, the client was not home, and that Barone used a cell phone belonging to a man on the street to call his wife. The jury could have concluded from this testimony that Petitioner left Hayes' house with Barone no later than 8:30 a.m., and nothing was presented to indicate when, if at all, Petitioner returned.

Thus, even if trial counsel had presented Hayes' proposed testimony that her landline telephone records do not show a call to L.L.'s cell telephone number on the morning of April 12, or Broxton's GPS evidence that Petitioner was at his mother's house that morning, that evidence would not have provided a reasonable probability of an acquittal—sufficient to undermine confidence in the outcome—in light of the other evidence in the case. Petitioner presented his defense to the jury that he was set up and that he believed he was talking to Kay, an older woman. He presented

evidence that McDonald was heard to admit to setting him up. He testified that he did not solicit L.L. for a lewd or lascivious act.

The jury resolved the issues of credibility and conflicts in the evidence against Petitioner and found him guilty. "[F]ederal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence." Jackson v. Virginia, 443 U.S. 307, 326 (1979). Petitioner has not shown a reasonable probability that Hayes' proposed testimony would have altered the jury's resolution of those conflicts and those credibility determinations. For these reasons, the adjudication of the state court is not contrary to Strickland or any other clearly established federal law as determined by the Supreme Court, and is not unreasonable in light of the state court record. Habeas relief on Ground 2 should be denied.

## First Supplemental Ground

In his first supplemental claim, Petitioner contends that trial counsel rendered ineffective assistance by agreeing with the prosecutor prior to trial not to put on evidence of an alleged incident in the park about which the victim had told police. ECF No. 33 at 13. L.L. reported that Petitioner solicited her at a neighborhood park approximately a year earlier. Petitioner contends that trial counsel could have put on evidence that would

have refuted the park incident by proving he could not have been there

because he was in jail at that time, thereby causing the jury to have

reasonable doubt about the victim's testimony that Petitioner solicited her

over the telephone, which was the crime charged.

In his amended Rule 3.850 motion, Petitioner claimed that his trial

counsel made an inappropriate agreement with the prosecutor not to

present evidence that could have refuted the victim's park incident

allegation that a year prior to his arrest in this case Petitioner approached

the victim in a neighborhood park and solicited her.  Ex. O at 4 (Claim 1).

The motion alleged that the victim and several of her relatives who had

been told of the alleged park incident gave conflicting testimony at their

depositions concerning the date of the park incident and what occurred

there.  Ex. O at 5.  He alleged that "none of them could give an exact time

frame of when the alleged park incident occurred."  *Id.*  The motion alleged

that trial counsel inappropriately agreed with the prosecutor to keep the

information about the park incident out of the evidence presented at trial.

Ex. O at 6.  He contended that if the evidence had been presented, counsel

could then have attacked the victim's credibility by presenting evidence that

he was incarcerated at the time the victim alleged the park incident

occurred, which would have demonstrated the falsity of her claim and

challenged her credibility.  Ex. O at 6.

At the evidentiary hearing held on the amended Rule 3.850 motion,

trial counsel testified as follows:

> [W]e made a decision to not address this because it would have
> been more prejudicial for the jury to hear that Mr. Dewitt was
> incarcerated.  Moreover, as stated previously, this matter was
> collateral to the State's case and was not admitted into
> evidence by the State.

Ex. O at 457.  Petitioner, acting pro se at the evidentiary hearing, noted that

when the victim was recalled during the defense's case at trial, counsel did

ask if she remembered what she told officers about the park incident.  Ex.

B at 177.  The following questions and answers occurred at trial during

questioning of L.L. by defense counsel:

> Q [defense counsel] What did you tell the officer?
>
> A [L.L.]  I really don't remember, but they asked me
> questions and I answered them.  I told them someone
> approached me at the park.  And they was asking me questions
> like who and what did they have on or something like that, and I
> just answered the questions.
>
> Q  When did this take place?
>
> A  I don't remember the date.
>
> Q  You don't remember the date?
>
> A  No.
>
> Q  You don't remember specifically when the park
> incident happened?
>
> A  No.

Q  Do you remember who approached you?

A  Yes.

Q  Who was that?

A  Steven.

Q  That's Mr. Dewitt, my client?

A  Yes.

Q  Do you remember how old you were when this happened?

A  No.  I don't' remember exactly how old I was, but I think I was 14.

Q  You were 14?

A  Approximately.

Q  That would be - -  do you remember the time of year that was?

A  I know I was probably 14 or 15.  That's all I know.  I don't remember the dates or what month it was.

Ex. B at 178-79.  Counsel then attempted to impeach the witness with her earlier deposition, which was admitted into evidence.  Ex. B at 183-84.

During closing argument, trial counsel argued that the victim's testimony was inconsistent, stating:

> One last incident to keep in mind, the State didn't want to bring it out, because it's another inconsistency.  The story about the park incident.  Take a look at [L.L.'s] deposition.  Remember what she testified to here today.
> My client testified he was locked up last year.  She testified that she was in a program in 2005.  When could that - - when could this park incident have happened?  It didn't.  Did not.

Ex. B at 351-52.

Case No. 4:15cv433-MW/CAS

At the evidentiary hearing on Petitioner's amended Rule 3.850 motion, Petitioner asked trial counsel to confirm that he had evidence showing the park allegation was "absolutely impossible because at the time she made the allegation I was locked up?"  Trial counsel answered that, at trial, he asked L.L. the date of the incident and she testified she could not remember.  Ex. O at 460.  Petitioner contended that because the victim had reported that the incident occurred about one year prior to the date that Petitioner was arrested in this case, proof that he was in jail one year prior to his arrest would have damaged the victim's credibility.  Ex. O at 460-61.  Counsel testified that he did not want to put on evidence that Petitioner had been incarcerated, although when Petitioner took the stand he unexpectedly changed the direction of the defense and testified that he had been in jail.  Ex. O at 464-65.

The post-conviction court denied relief on this claim, stating:

> Well, let me just make a couple of observations here. One, we've been talking about the transcript.  Looking at the trial transcript, which is an exhibit in the record, Page 183, [defense counsel] was cross-examining - - or actually direct examination of the alleged victim in this case, and showed her the deposition, asked her if it refreshed her recollection as to when the park incident took place.  And her answer was, I still don't remember the date.  . . . .
>
> . . . .
>
> And Mr. Dewitt, your allegations are that he made an agreement with [the prosecutor] to keep this incident out.  He's

testified that it didn't need to be in because it was definitely prejudicial to you. That he's made judgment calls not to bring information out. And certainly when you're charged with lewd and lascivious conduct, i.e.: solicitation of a victim, I can't find that any reasonable lawyer would bring evidence of prior incidents out of solicitation of the same person.

> . . . .

It's trial strategy. It's a judgment call. It does not meet the requirements of Strickland v. Washington. It doesn't show that his performance was deficient. And it doesn't show his agreement to keep out highly prejudicial evidence would have made a difference in the outcome of the case. And that the jury would have had a different verdict had this been put in. I don't find deficient conduct. I don't find it meets the requirements of Strickland v. Washington and Claim 1 is denied.

Ex. O at 469-72.

Respondent correctly contends that denial of relief on this claim was not appealed to the state First District Court of Appeal. *See* Ex. P. For that reason, Respondent contends the claim is unexhausted because it was not properly presented to each appropriate state court. Further, under Florida law, when a brief is filed in an appeal from the denial of post-conviction relief after an evidentiary hearing, only those arguments that are fully presented are preserved. Watson v. State, 975 So. 2d 572, 573 (Fla. 1st DCA 2008); *see also* Atwater v. Crosby, 451 F.3d 799, 809-11 (11th Cir. 2006) ("Because Atwater did not properly exhaust this claim in state court, this issue is defaulted."). This is an established and regularly enforced procedural rule. Further, Petitioner has not attempted to demonstrate

cause for non-compliance or actual prejudice resulting from the alleged

constitutional violation, or that a constitutional violation probably resulted in

the conviction of one who is actually innocent. *See id.* at 810.

Notwithstanding this default, the claim is without merit and should be

denied. The transcript excerpts above support the post-conviction court's

ruling that counsel made a judgment call not to admit evidence that

Petitioner had been incarcerated at the unspecified time of the alleged park

incident. The court also noted that counsel did in fact question the victim

about the park incident and attempted to impeach her with her prior

deposition testimony. Ex. O at 469-70. The victim was adamant even after

attempted impeachment that she did not remember the date or year that

the park incident took place. In light of that, trial counsel could have gained

nothing by putting on evidence that Petitioner had been incarcerated at

some time in the past that may or may not have been at the time of the

park incident. The fact that Petitioner later decided to testify about having

been incarcerated does not transform the judgment call based on the

circumstances present at trial into deficient performance. Petitioner failed

to demonstrate any agreement between his counsel and the prosecutor not

to present evidence of the park incident. Moreover, trial counsel did

present evidence of the park incident, attempted to establish the date that

the incident occurred, attempted to impeach L.L.'s testimony, and argued it to the jury as a matter that was damaging to her credibility. The fact that his efforts were not successful does not prove deficient representation. *See, e.g.*, Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000).

For all these reasons, Petitioner has failed to demonstrate that the state court adjudication of this claim was contrary to, or an unreasonable application of, Strickland or any other clearly established federal law as determined by the Supreme Court, or that it was an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Habeas relief on this first supplemental ground should be denied.

## Second Supplemental Ground

Petitioner contends that trial counsel rendered ineffective assistance by failing to present testimony and evidence regarding his GPS monitoring records. ECF No. 33 at 13-15. He argues that trial counsel could have presented testimony and GPS monitoring records by Teresa Broxton, employed by pretrial services, which would have showed that he was at his mother's house when the solicitation call was made. This claim is, in substance, the same supplemental argument presented in Ground 2, *supra*. In Ground 2, it is recommended that entitlement to habeas relief

regarding counsel's representation of Petitioner in not presenting the testimony and evidence of Petitioner's GPS monitoring through Teresa Broxton has not been shown. That discussion will not be repeated here.

For the reasons set forth in Ground 2 above, Petitioner has failed to demonstrate that the adjudication of the state court is contrary to, or an unreasonable application of, <u>Strickland</u> or any other clearly established federal law as determined by the Supreme Court, or that it was an unreasonable determination of the facts in light of evidence presented in the state court proceedings. Habeas relief on this Second Supplemental Ground should be denied.

## Third Supplemental Ground

Petitioner contends that trial counsel rendered ineffective assistance by failing to object to or require the State to correct the prosecutor's <u>Giglio</u> violation when he commented during opening statement, presented evidence, and commented in closing argument about a stalking charge that was clearly refuted by GPS records. ECF No. 33 at 16. This claim was raised in Petitioner's amended Rule 3.850 in Claim 18, where he contended in pertinent part that he was originally arrested for aggravated stalking based on allegations that in the early morning hours of April 13, 2007, he came to L.L.'s home and tapped on her window. Ex. O at 276-79.

Petitioner argued in the state court that the charge was dropped because

GPS information submitted to police by his public defender showed he

could not have been stalking L.L. at the time indicated.  Ex. O at 277.

At trial, in opening statement, the prosecutor stated:

> The victim, [L.L.], will tell you she receives phone calls throughout the night from unknown numbers.  The call never shows up with a phone number.
>
> She tells him, stop calling me.  Sometime around midnight she gets another call and he asked can he come to her house.  She says, no, you can't.
>
> The victim is going to testify a few minutes later, she hears a tap at her window.  She will tell you it scared her, but she didn't get up and tell her mom or anything.  She just lays back down and goes to sleep.  The victim is going to testify that the next morning she starts to get these phone calls again.  She will tell you it's the same man, same voice she knows as Marquilla's uncle.  She doesn't know his name, she knows him as Tank.

Ex. B at 14 (transcript pagination).  During the state's case, L. L. testified, "I

remember him calling like in the - - early in the morning, maybe like 1:00."

She went on to testify:

> The day before I told the deputy, I told him, he called my phone and I was like, you know, he asked can he come over. And I said, no. No, you - - and I kept hanging up the phone, and he called back and was like I'm coming.  I hung the phone up and that's when I laid in my bed and I was - - I was asleep, yeah, I was asleep maybe 20, probably not even that.  15, 20 minutes, something like that.  I heard something at my window, and I didn't necessarily get up.  I lift my head up, and I looked, and I just - - I didn't know what it was.  But I seen a shadow at my window and I got scared, so I just laid back down and put

> my head under the cover.  And that's when the next morning,
> right when I got up, I went to school and told the deputy.

Ex. B at 42-43 (transcript pagination).  In closing argument, the prosecutor

made reference to Petitioner having called L.L. throughout the night and

the next day.  Ex. B at 357 (transcript pagination).

Petitioner contended in the amended post-conviction motion that trial

counsel should have objected to these arguments on the grounds that they

referred to a stalking charge that had been dropped and because both the

State and the defense knew the GPS records showed he was not at her

window in the early morning hours of the day in question.  Ex. O at 279.

He argued at the evidentiary hearing that the implication from her testimony

and the argument of the prosecutor was that Petitioner was at the victim's

window around 1:00 a.m.  Ex. O at 422.  Trial counsel testified he did not

object because there was no allegation Petitioner tapped on the window,

the victim did not testify she saw a person at the window, and because

Petitioner was on trial for lewd or lascivious conduct, not tapping on the

window or stalking.  Ex. O at 421-22, 425.

The Giglio claim was not discussed at the evidentiary hearing, but the

claim was denied without comment in the order entered on that same date.

Ex. O at 327.  Petitioner did not raise this issue in his brief on appeal from

denial of post-conviction relief.  *See* Exs. P, Q, R.  For this reason,

Respondent contends that the claim is unexhausted and procedurally defaulted. As discussed above, under Florida law, only those post-conviction arguments that are presented in an appeal from an evidentiary hearing are preserved. Watson, 975 So. 2d at 573; *see also* Atwater, 451 F.3d at 809-11. In order for a claim to be exhausted for purposes of habeas corpus in the federal court, the federal claim must be presented in each appropriate state court. Because the claim was not presented in the state appellate court, it is unexhausted. Petitioner has not attempted to demonstrate cause for non-compliance with the preservation and exhaustion requirements, nor has he demonstrated actual prejudice resulting from the alleged constitutional violation, or that a constitutional violation probably resulted in the conviction of one who is actually innocent.

Regardless of the procedural default, the claim is without merit and should be denied. As the excerpts from the prosecutor's argument and the victim's testimony show, the prosecutor never argued that Petitioner was at L.L.'s window in the early morning hours. L.L. never testified he was at her window, and in fact did not say it was a person at her window. Under Giglio, "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Id.*, 405 U.S. at 153. The arguments of the prosecutor and the

testimony of the victim have not been shown to be an attempt at "deliberate deception."  No false testimony was presented by the victim.  The arguments of the prosecutor, to the extent they can be said to imply that the Petitioner may have tapped on L.L.'s window, do not meet the requirements of deliberate deception or direct accusation of Petitioner as having been guilty of tapping on her window.  Under <u>Giglio</u>, a finding of materiality is required, and a new trial will be ordered only if " 'false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.' " *Id.* at 154.  Based on the evidence presented in this case that Petitioner was the person who called L.L. and solicited a lewd or lascivious act, Petitioner has not demonstrated a reasonable probability that but for counsel's alleged errors, the jury would probably have found Petitioner not guilty—a reasonable probability being one sufficient to undermine the court's confidence in the outcome.

Accordingly, even if the claim were not procedurally defaulted for failure to present it to all appropriate state courts, the adjudication of the post-conviction court that trial counsel was not constitutionally ineffective for failing to object on the basis of <u>Giglio</u> to the arguments of the prosecutor or the testimony of L.L. has not been shown to be contrary to any clearly established federal law as determined by the Supreme Court.  Nor is the

state court adjudication an unreasonable determination of the facts in light of the evidence in the state court proceedings. Habeas relief on Petitioner's Third Supplemental Ground should be denied.

## Fourth Supplemental Ground

In his last supplemental claim, Petitioner contends that trial counsel rendered ineffective assistance by failing to object to improper prosecutorial comments. ECF No. 32 at 8. He does not set forth those arguments in his supplemental ground, but makes reference to Claim 17 of his amended post-conviction motion. *Id.* In that claim, Petitioner contended that trial counsel should have objected to the prosecutor's "continual mentioning of the victim's age to gain sympathy from the jury." Ex. O at 274. In the claim, he cited ten instances of the prosecutor mentioning that the victim was age 15. *Id.* He also contended trial counsel should have objected to the prosecutor's "obscuring the jury's view" with personal opinion about the merits of the case and the credibility of the witnesses. *Id.* 274-75. He argued that the prosecutor improperly bolstered the victim's testimony, without objection by his trial counsel, and placed the prestige of the government behind the witness. *Id.* at 275.

An evidentiary hearing was held on this claim, where trial counsel explained that he felt that he had no legal basis to object to references to

the victim's age because the age of the victim was an element of the crime

charged.  Ex. O at 478.  Trial counsel also thought that mentioning the age

of the victim that often was not cumulative.  *Id.* at 479.  When asked why he

did not object when the prosecutor argued in closing that if the detective

was going to lie, why did he not tell a big lie, counsel stated his belief that

the comment and similar comments were fair rebuttal to the intense cross-

examination of the detective concerning inconsistencies in his statement.

*Id.* at 480.  When asked why he did not object when the prosecutor argued

that the victim would have nothing to gain by lying about not setting up

Petitioner for the crime, trial counsel testified that he did not consider that to

be vouching for the witness's credibility, but was fair response to the

defense allegation that L.L. was lying and Petitioner had been set up.  Ex.

O at 481.  Further, under Florida law, it is not improper for the prosecutor to

argue "incident to evaluating a witness's credibility" that the witness had no

reason to lie.  *See* Valentine v. State, 98 So. 3d 44, 56 (Fla. 2012), quoting

Johnson v. State, 801 So. 2d 141, 142 (Fla. 4th DCA 2001)).  The Florida

Supreme Court has held that the general rule regarding bolstering

testimony is that such evidence is inadmissible absent impeachment or

some other attempt to show a reason for the witness's lack of credibility.

Demps v. State, 462 So. 2d 1074, 1075 (Fla. 1984).

Petitioner also contended it was improper vouching when the prosecutor argued that the victim's recitation of events had remained consistent because she was telling the truth and that is what truthful people do. Ex. O at 482. When asked why he did not object, counsel stated that maybe it was because Petitioner kept whispering to him or he was trying to focus on his closing. *Id.* at 482. The context of the prosecutor's argument was that consistency in the reports of the incident was evidence of truthfulness and thus reliability. Florida Standard Jury Instruction 3.9 (Crim.) Weighing the Evidence, states that one of the things that the jury should consider in deciding which evidence is the best and which evidence should not be relied on is whether the witness at some other time made an inconsistent statement to that given in court. The prosecutor's argument, in the context in which it was presented, falls within the ambit of this jury instruction.

Petitioner asked counsel why he did not object to the prosecutor's comments that a lot of defense witnesses were put on the stand, including defense counsel's legal assistant, who testified that she located the telephone in the recreation center from which one of the calls was made. Ex. O at 483. Trial counsel inquired what ground would support that objection, to which Petitioner responded that the prosecutor was assuming

before the jury that because she is your legal assistant she would come in and lie. Ex. O at 484. Trial counsel testified the prosecutor's comment was not an improper attack on a witness, but was simply suggesting that because the witness was employed by defense counsel, her testimony might be inclined to be favorable.[13] *Id.*

The post-conviction court denied relief on this claim, stating:

I find that Claim 17 has not been established. I don't find that there are any prosecutorial misconduct on the part of [the prosecutor]. I think that there were arguments being made on both sides. And you're talking about - - let's just take for instance here in the closing arguments. You're talking about that [the prosecutor] violated the rules because she said well, when the detective testified, why wouldn't he tell a big lie and just say that Mr. Dewitt confessed?
. . . .
So, you know, both lawyers are arguing, both lawyers are trying to address the facts. I don't find that there has been any bolstering proven. I don't find that there has been any misstatements that were made. And even if there were statements that were made that could have been objected to, nobody tries a perfect case. And it's always good to look at something from the rearview mirror and look and see what happens and you can pick cases apart.
. . . .
But the question is, and the bottom line is, has there been anything submitted to the Court that meets the criteria of Strickland v. Washington that says that [defense counsel's]

---

[13] Petitioner also argued in Claim 17 of his amended post-conviction motion that trial counsel should have objected to the prosecutor indicating that information not presented to the jury supported the witnesses. Ex. O at 275. Petitioner did not elicit testimony about these allegations from trial counsel at the evidentiary hearing. Even so, a review of the transcript references provided in Claim 17 for this allegation does not substantiate the claim that the prosecutor was suggesting to the jury that information not presented to them supported the charge or the state's witnesses.

representation was deficient?  And not only was it deficient, but that deficiency prejudiced that defendant to such an effect that had that deficiency not occurred the jury would have reached a different verdict.

One, I don't find [defense counsel] was deficient in his performance.  And two, I don't find that there is anything that has been presented to me today that shows me that the jury would have reached a different verdict had we changed anything that you've argued about today.  So the motion is denied for the reasons stated on the record.

Ex. O at 485-86.

Respondent correctly contends that because this claim was not briefed in the appeal taken from denial of post-conviction relief, the claim is unexhausted and procedurally defaulted.  Petitioner has shown no cause for the default or prejudice therefrom, and has not demonstrated manifest injustice to excuse the default.  Regardless of the procedural default, the claim should be denied for the reasons discussed above and the testimony relied upon by the post-conviction court.

Habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  Jackson, 443 U.S. at 332, n.5 (Stevens, J., concurring in judgment).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 102. *Id.* at 102-03 (citation omitted).

As noted earlier, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " <u>Mirzayance</u>, 556 U.S. at 123. The <u>Strickland</u> standard is a general one and a state court has great latitude to reasonably determine that a defendant has not satisfied that standard. *Id.* In a habeas proceeding, a "doubly deferential judicial review . . . applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. <u>Strickland</u>, 466 U.S. at 697.

Even if one or more of these prosecutorial arguments were improper and counsel should have objected, Petitioner failed to demonstrate prejudice under <u>Strickland</u>. The victim identified Petitioner as the person who called her and solicited a lewd or lascivious act. After the last telephone call, at which police were present, Petitioner appeared at the victim's home and was then arrested. Petitioner and his counsel presented a vigorous defense with several witnesses supporting the claim that he was

being set up by a jail inmate which whom he had fought. The jury rejected that theory of defense. On the evidence presented at trial, and considering paucity of significance of any error of counsel in failing to object, Petitioner has not demonstrated a reasonable probability that but for counsel's error, a different result would have been obtained—a reasonable probability being one sufficient to undermine the court's confidence in the outcome.

Even if this claim was not unexhausted and procedurally defaulted, Petitioner has failed to show under the doubly deferential standard applicable here that the adjudication of the state court is contrary to, or an unreasonable application of, Strickland or any other federal law as determined by the Supreme Court. Nor has the adjudication been shown to be an unreasonable determination of the facts in light of the state court record. Accordingly, habeas relief on Supplemental Claim Four should be denied.

## Conclusion

Based on the foregoing, Petitioner Steven R. Dewitt is not entitled to federal habeas relief. Accordingly, the § 2254 petition (ECF No. 5) as supplemented and amended (Ex. Nos. 33, 37) should be denied.

**Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not

otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No. 5) as supplemented and amended.  (ECF Nos.

33, 37).  It is further **RECOMMENDED** that a certificate of appealability be

**DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 7, 2017.


**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**